UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HARDESTY BUILDERS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-142 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court are Plaintiff Hardesty Builder's Inc.'s Motion for Partial Summary Judgment (D.E. 35) and Defendants Mid-Continent and Oklahoma Surety Company's Motion for Summary Judgment (D.E. 36.)  For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (D.E. 35) is DENIED.  Defendants' Motion for Summary Judgment (D.E. 36) is GRANTED.

**I.      Jurisdiction**

The Court has diversity subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a) because all parties are diverse and the amount in controversy exceeds $75,000.

**II.      Background**

**A.      Factual Background**

Plaintiff Hardesty Builders, Inc. ("Hardesty") is the owner of a succession of Commercial General Liability policies (referred to collectively as "the Policy") purchased from Defendant Oklahoma Surety Company ("OSC").  (D.E. 36, Ex. A, B, C, D.)  Defendant Mid-Continent Casualty Company ("Mid-Continent") is the parent company of Defendant OSC.  Most of Hardesty's transactions were through Mid-Continent.  Intervenor Simon Herbert & McClelland,

LLP is the law firm that represented Hardesty in defending and settling the claims that are the subject of this action.  (D.E. 11.)

In January 2004, Hardesty entered into a construction contract with Jane and Lee Guinn to gut and remodel their home and construct several new buildings on the premises.  Hardesty completed the work around October 2006.  Beginning in 2007, the Guinns began to complain of various defects in the work completed.

Beginning in April or May of 2008, Hardesty, through its lawyer, Paul Simon, kept OSC periodically informed of the progress of the Guinns' claim against Hardesty.  (D.E. 44 at 4; D.E. 46, Ex. J (emails with Mellinee Harwick)).

In a letter dated May 19, 2008, Mid-Continent acknowledged receipt of "Claim Number 1303521," filed by Claimants, Dr. Lee Guinn and Jane Guinn.  (D.E. 46, Ex. F at 1.)  The letter states: "We do not have sufficient information to enable us to determine whether Hardesty Builders, Inc. is covered under the above policy for liability resulting from this claim.  In order to protect your interests we shall make an immediate investigation."  (Id.)  The letter is signed by Claude Husbands, who is listed as "Senior Claim Representative."  (Id. at 7.)

Around July 21, 2008, the Guinns filed a request to initiate the Texas Residential Construction Commission's State Sponsored Inspection Process ("SIRP") pursuant to Tex. Prop. Code § 426.001 et seq.  (D.E. 36, Ex. E; D.E. 35, Ex. 1.)  The SIRP continued throughout 2008. (D.E. 36, Ex. I at 26-27.)

The evidence shows that during the SIRP period, Hardesty's lawyer Mr. Simons kept in contact with Mr. Husbands at Mid-Continent by email and telephone.  On September 18, 2008, Mr. Simon emailed Mr. Husbands the contract between the Guinns and Hardesty.  (D.E. 46, Ex. K, p. 1.)  On September 22, 2008, Mr. Simon sent an email responding to Mr. Husband's request

about Hardesty's subcontractors, and asked how long it would be before Mid-Continent would "be able to issue a letter accepting coverage."  (Id. at 2.)  On October 16, he stated in another email to Mr. Husbands: "I have not received anything from you on this in the month since I provided the information to you.  Can you let me know where we stand on this?"  (Id. at 3.) However, in neither of these transactions did Mr. Simon attach the SIRP request form or any further documentation regarding the ongoing SIRP proceeding.

The final appellate ruling in the SIRP, finding the presence of construction defects in Hardesty's work for the Guinns, was issued in January 2009.  (D.E. 36, Ex. I at 26-27.)

Mr. Simon continued to contact Mr. Husbands regarding coverage.  In an email dated March 4, 2009, Mr. Simon wrote to Mr. Husbands:

> I tried calling you before sending this email.  I am again attempting to learn whether Mid-Continent has determined whether to cover, deny, or cover with or more reservation(s), [Claim Number 1303521.  I believe Mid-Continent was first made aware of this claim nearly a year ago, and Hardesty has always cooperated with Mid-Continent in its request for information.
>
> In any case, as I mentioned in my voicemail, the State sent an inspector to the house, and while its findings are generally favorable to Hardesty (e.g. no evidence of roof leaks and the doors and windows are windproof), its recommendations largely appear to go against Hardesty (though I think even the homeowners' lawyer would agree that's anything but a clear issue.)
>
> In any case, I need to [sic] know, not just whether Mid-Continent will cover this claim but also whether Mid-Continent will deny coverage that otherwise might exist based on Hardesty's requirement, under the law, to make a settlement offer to the other side.  Please let me know as soon as possible.  If you call me today or tomorrow, please call me on my home number…If you call me Friday or later, please call me at the office[.]

(D.E. 46, Ex. K, p. 4.)

Mr. Simon claims that two days later, on March 6, 2009, he received a phone call from Mr. Husbands.  Mr. Simon contends that during this phone conversation Mr. Husbands informed

him that Mid-Continent was going to deny  coverage and that a letter denying coverage would follow.  (D.E. 36, Ex. I (Simon Depo.) at 33-35, 39.)[1]

On May 15, 2009, the Guinns filed a lawsuit against Hardesty for negligence and violations of the Texas Deceptive Trade Practices Act ("TDCA") in the 156th Judicial District Court, Aransas County, Texas.  (D.E. 46, Ex. B.)

Beginning on June 1, 2009, Hardesty and the Guinns conducted a mediation to attempt to resolve their differences.  Hardesty ultimately reached a settlement with the Guinns.  (D.E. 46, p. 4; D.E.  44, p. 4.)

However, Mid-Continent did not attend the mediation and did not approve of the settlement agreement.  (D.E. 36, Ex. I, p. 36.)  Rather, the evidence shows Mid-Continent did not even become aware of the lawsuit filed by the Guinns until June 12, 2009, when Mr. Simon sent Mr. Husbands an email stating: "This is to advise you that suit has been filed in this matter, but Hardesty has not been served with a copy of the lawsuit.  I will keep you posted."  (D.E. 46, Ex. K, p. 6.)  That same day, Mr. Simon sent Mr. Husbands an email containing a copy of the Guinns' lawsuit.  (Id. at 7.)

On July 16, 2009, Mid-Continent sent a letter acknowledging receipt of the Guinns' "Original Petition filed May 15, 2009 in the 156th Judicial District Court, Aransas County, Texas."  The letter states: "Since the filed Plaintiffs' Original Petition may involve issues of coverage, we will review the Petition further and advise you of the position of the Company as soon as that review is completed."  (D.E. 46, Ex. H, p. 2.)

On July 31, 2009, Mid-Continent sent a letter to Mr. Simon stating that, based on its review of the Guinns' Original Petition, there was no duty to defend or indemnify Hardesty for

---

[1] In his deposition, Mr. Simon was unable to point to a record of this phone call in his time entries.  However, he indicated it was in one of the entries that was blacked out due to attorney-client privilege.  (D.E. 36 at 32-35.)

the Guinns' claim because: (1) damage to the property are to the insured's work (2) damages sought may not qualify as "Property Damage" caused by an "Occurrence" and (3) some of the damages may have manifested subsequent to OSC's last policy coverage date of 1/22/07. "Therefore, we will not participate in or otherwise contribute towards any settlement, indemnification and/or defense for the claim presented by Lee and Jane Guinn." The letter is signed by Claude Husbands. (D.E. 35, Ex. 7; D.E. 46, Ex. I.)

### B.    Procedural Background

In their complaint, filed with this Court on November 5, 2009, Plaintiff asserts three claims against Defendants: (1) breach of contract based on failure to defend or indemnify Hardesty against the Guinns' claim; (2) engaging in unfair settlement practices under Tex. Ins. Code § 541.060(2)(A) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Hardesty's claim for defense costs; and (3) engaging in deceptive trade practices under the DTPA by violating Chapter 541.

Plaintiff originally filed suit in state court in the 36th Judicial District Court of Aransas County, Texas, on September 28, 2009.  Defendants removed the action based on diversity jurisdiction to the Houston Division for the Southern District of Texas.[2]  Simon Herbert & McClelland ("SHM"), Mr. Simon's law firm, filed a motion to intervene on April 30, 2010. (D.E. 11.)  On May 18, 2010, Judge Atlas transferred the case to this Court pursuant to 28 U.S.C. § 1441(a).

Plaintiffs now move for partial summary judgment on their claim for breach of contract based on Defendants' duty to defend.  (D.E. 35.)  Defendants have responded.  (D.E. 44.)

---

[2] Although the notice of removal caption stated "Corpus Christi Division."  (D.E. 1.)

Defendants also move for summary judgment on all Plaintiff's claims.  (D.E. 36.)  Plaintiffs have responded.  (D.E. 44.)  Defendants filed a reply to the response.  (D.E. 53.)[3]

## III.   Discussion

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law."  Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case."  Rivera, 349 F.3d at 247.  The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

---

[3] Pursuant to the General Order, "[n]o reply to the opposition to a motion will be filed by movant without leave of Court on good cause." (D.E. 29, p. 2.)  Although Defendants failed to obtain leave of court in filing their reply, the reply was nonetheless considered.  In light of this, Defendants' motions respecting the reply (D.E. 51, D.E. 52) are moot.

P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B.     Analysis

Plaintiff seeks partial summary judgment on its claim for breach of contract based on Defendants' failure to defend Plaintiff in the SIRP proceeding and the subsequent state court lawsuit.  (D.E. 35.)  Defendants seek summary judgment on Plaintiff's breach of contract claim as well as on Plaintiff's extra-contractual claims for violation of the Texas Insurance Code, Chapter 541(a)(2)(A), and the DTPA.  The Court first considers Plaintiff's breach of contract claim based on breach of the duty to defend.

### 1.     Duty to Defend

Texas follows the "eight-corners" rule of insurance contract interpretation. See, e.g., GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). The "insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." Liberty Mut. Ins. Co. v. Graham, 473 F.3d 596, 599 (5th Cir. 2000). If the pleadings allege facts stating a cause of action potentially falling within the insurance policy's scope of coverage, the insurer has

a duty to defend. <u>Id</u>. at 600.  The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. <u>Lincoln General Ins. Co. v. Reyna</u>, 401 F.3d 347, 350 (5th Cir. 2005).  Doubtful cases will be resolved in favor of the insured. <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc</u>., 939 S.W.2d 139, 141 (Tex. 1997).

The Court must first determine whether the Guinns' claim generally fell within the scope of the Policy's coverage.  Plaintiff's Policy provides: "We will pay those sums that the insured becomes obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (D.E. 35, Ex. 3.)  "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property…or Loss of use of tangible property that is not physically injured."  (<u>Id</u>.)

Plaintiffs contend a duty to defend existed because, in the SIRP and in their state court Original Petition, the Guinns claimed that Hardesty's defective re-modeling work on their home caused property damage to various parts of their home. (D.E. 35, Ex. 2.)  Defendants respond that they had no duty to defend (or indemnify) Hardesty against the Guinns' claim because (1) an SIRP proceeding is not a "suit" within the meaning of the policy, so did not trigger any duty to defend; (2) Plaintiff failed to meet the conditions precedent in the Policy because Hardesty did not tender the SIRP or the Guinns' lawsuit on Defendants and voluntarily assumed the settlement agreement without consent or participation of Defendants; and (3) the Guinns' claim is barred by Exclusion L of the Policy (the "Your Work" exclusion).  (D.E. 36.)

### a.    No Duty to Defend Was Triggered

Defendants contend there was no duty to defend against the Guinns' claims because Hardesty never served Defendant with any complaint triggering its duty to defend.  (D.E. 36, p. 12).  Plaintiff contends Mid-Continent had a duty to defend Hardesty against the Guinns' claim because Mid-Continent was served with the District Court petition "as soon as practicable" and submitted the SIRP request as soon as it was received.  (D.E. 46, p. 13.)

### (1) No Suit Was Tendered Prior to Settlement

The Policy states, in relevant part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (D.E. 35, Ex. 3).  However, the Policy also contains a notice of suit provision, requiring Hardesty to "see to it that [insurer is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."   In addition, if a claim is made or a "suit" is brought, the insured "must see to it that [insurer] receive[s] written notice of the claim or 'suit' as soon as practicable" and must "immediately send [insurer] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit[.]'  (D.E. 36, Ex. A, p. 19-20).

 "One of the purposes of a notice of suit provision in an insurance policy is to notify the insurer that the insured has been served with process and that the insurer is expected to defend the suit."  Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173-174 (Tex. 1995) (quoting Weaver v. Hartford Acc. & Indem. Co., 570 S.W.2d 367, 369 (Tex. 1978)."  As such, "the duty to defend does not arise until a petition alleging a potentially covered claim is tendered to the insurer."  Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co., 391 F.3d 639, 644 (5th

Cir. 2004) (quoting <u>Lafarge Corp. v. Hartford Cas. Ins. Co.</u>, 61 F.3d 389, 400 (5th Cir. 1995))

(citing <u>Members Ins. Co. v. Branscum</u>, 803 S.W.2d 462, 466-67 (Tex. App.--Dallas 1991, no

writ)).  The Texas Supreme Court has clarified, with respect to notice of claims by additional

insureds, that "[m]ere awareness of a claim or suit does not impose a duty on the insurer to

defend under the policy; there is no unilateral duty to act unless and until the additional insured

first requests a defense – a threshold duty that the insured fulfills under the policy by notifying

the insurer that the insured has been served with process and the insurer is expected to answer on

its behalf."  <u>Nat'l Union Fire Ins. Co. v. Crocker</u>, 246 S.W.3d 603, 608 (Tex. 2008).

Under these holdings, Defendant had no duty to defend – and thus cannot be required to

pay any of Plaintiff's defense costs – until the Guinns' underlying suit implicated the Policy and

Plaintiff tendered the Guinns' suit upon Defendants.  <u>Royal Ins. Co. of Am</u>, 391 F.3d at 644.  Yet

the evidence clearly establishes that Defendants did not receive a copy of the Guinns' lawsuit

until <u>after</u> Hardesty entered settlement negotiations on June 1, 2009.  The Original Petition was

filed in state court on May 15, 2009. (D.E. 46, Ex. B.)  Hardesty contends it was not served with

the Original Petition until June 12, 2009.  (D.E. 46, Ex. K (June 12, 2009 email to Claude

Husbands), p. 6; D.E. 36, Ex. I (Simon Depo.) at 38.)  On June 12, 2009, Mr. Simon forwarded

the lawsuit to Mr. Husbands.  (D.E. 46, Ex. K.)  On July 16, 2009, Mid-Continent sent a letter

acknowledging receipt of the Guinns' Original Petition.  (D.E. 46, Ex. H, p. 2.) On July 31,

2009, Mid-Continent sent Plaintiff a letter stating that, based on its review of the Original

Petition, it was declining coverage. (D.E. 35, Ex. 7; D.E. 46, Ex. I.)

Based on this evidence – regardless of when Plaintiff was served or obtained a copy of

the Original Petition – there is simply no documentation to support that Mid-Continent possessed

a copy of the lawsuit prior to June 12, 2009, after settlement had already occurred.  Plaintiff

points out that Mid-Continent acknowledged receipt of the Guinn's "claim" in a letter dated May 19, 2008. (D.E. 46, p. 15, Ex. F.) However, under the plain terms of Plaintiff's Policy, and under Texas law, until a "suit" was filed against Hardesty and served upon Defendants, there was no duty to defend Hardesty against the Guinns' lawsuit. Royal Ins. Co. of Am, 391 F.3d at 644; Nat'l Union Fire Ins. Co., 246 S.W.3d at 608. Mere receipt of the "claim" did not impose on Defendants a duty to defend under the policy. Nat'l Union Fire Ins. Co., 246 S.W.3d at 608.

A court came to the same conclusion in a recent case, also involving a Mid-Continent policy. West Texas Agriplex v. Mid-Continent Casualty Company, 2004 WL 1515122, *10 (N.D. Tex. July 7, 2004). The plaintiff presented a claim to Mid-Continent, but no lawsuit had yet been filed. Mid-Continent acknowledged receipt of the claim, and made a settlement offer, which plaintiff rejected, believing it was entitled to indemnity in the entire amount of the claim. Id. at *2. When plaintiff subsequently sued for breach of duty to defend, Mid-Continent contended that no duty to defend ever arose, despite its receipt of plaintiff's "claim," because a lawsuit was never filed. Id. at * 10. The court noted that plaintiff's policy clearly stated that Mid-Continent "will have the right and duty to defend the insured against any 'suit' seeking [ ] damages" and clearly defined "suit" to mean "any civil proceeding ..." including an arbitration or "any other alternative dispute resolution proceeding" in "which the insured submits with [Mid-Continent's] consent." Id. Because no lawsuit had yet been filed when Mid-Continent made its rejected settlement offer, the court found the duty to defend had not been triggered. Id

Likewise, in this case, no duty to defend was triggered merely by Defendants' receipt of the Guinns' "claim." Royal Ins. Co. of Am, 391 F.3d at 644; Nat'l Union Fire Ins. Co., 246 S.W.3d at 608.

Plaintiff objects that Hardesty sent the Original Petition "as soon as practicable" in satisfaction of the Policy's terms.  (D.E. 46, p. 13.)  The Fifth Circuit has held that "tardy notice of a covered claim will not defeat coverage unless the insurer was actually prejudiced by the delay."  Nat'l Union, 246 S.W.3d at 609 (citing PAJ, Inc. v. Hanover Ins. Co. 243 S.W.3d 630, 636 (Tex. 2008)).  However, the Texas Supreme Court has held that when "the insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer has no opportunity to participate in or consent to the ultimate settlement decision … the insurer is prejudiced as a matter of law."  Motiva Enters., LLC v. St. Paul Fire & Marine Ins. Co., 445 F.3d 381, 386 (5th Cir. 2006).  As discussed further below, Plaintiff entered settlement negotiations around June 1, 2009, without serving Defendants with the Guinn's state court petition.  Even if Plaintiff were able to demonstrate the absence of prejudice, there was no duty to defend Hardesty until a suit alleging a potentially covered claim was tendered on Defendants, which did not occur until June 12, 2009.  Royal Ins. Co. of Am, 391 F.3d at 644; Nat'l Union Fire Ins. Co., 246 S.W.3d at 608.  Accordingly, Defendants did not breach their duty to defend based on claims brought in the Guinns' Original Petition, and cannot be required to pay any costs incurred by Hardesty prior to tender of the Guinns' lawsuit on June 12, 2009.  Plaintiff's breach of contract claim based on this theory fails.

### (2) The SIRP Is Not a "Suit" Under the Policy

Plaintiff contends that, even if the June 2009 settlement occurred prior to tender of the Guinns' state court lawsuit, the SIRP, instituted around July 21, 2008, constituted a "suit" triggering the duty to defend.  (D.E. 46, p. 5-13.)  Defendants object that the SIRP is not a "suit" under the Policy and that, in any case, Hardesty did not tender the SIRP to OSC or Mid-Continent.  (D.E. 50, p. 5-9.)

The Court finds an SIRP is not a "suit" within the meaning of the Mid-Continent Policy. In determining whether the SIRP constitutes a "suit" under the Policy, the Court looks to the plain and ordinary meaning of terms of the Policy that are clear and unambiguous.  <u>National Union Fire Ins. Co. v. CNA Ins. Cos</u>., 28 F.3d 29, 32 (5th Cir. Tex. 1994).  "[I]f only one reasonable meaning clearly emerges[,] it is not ambiguous." <u>Id</u>. (quoting <u>Universal C.I.T. Credit Corp. v. Daniel</u>, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)).  Plaintiff's Policy plainly defines a "suit" as:

> a civil proceeding in which damages because of bodily injury property damage or personal and advertising injury to which this insurance applies are alleged.  "Suit" includes:
>
> a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with out consent;
>
> b.    or any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(D.E. 36, Ex. A.)

An SIRP is not a "civil proceeding… in which damages are alleged" or an "arbitration proceeding in which such damages are claimed."  (D.E. 36, Ex. A.)  The purpose of the SIRP was "to oversee the registration of homes, homebuilders, and remodelers; to administer a state-sponsored inspection and dispute resolution process; and to create limited statutory warranties and building and performance standards."  <u>In re Hall</u>, 2005 Tex. App. LEXIS 10438, * 2-3 (Tex. App. Beaumont Dec. 15, 2005) (citing Tex. Prop. Code Ann. §§ 401.001-438.001 (Vernon Supp. 2005)).  Under the Act, before a suit can be filed "on any action for damages or other relief arising from a 'construction defect,' the homeowner or builder must comply with Subtitle D of the Act, which includes a state-sponsored inspection and dispute resolution process." <u>Id</u>. (citing Tex. Prop. Code Ann. §§ 426.005, 428.001-428.005 (Vernon Supp. 2005)).  The filing of a State

Sponsored Inspection Request is defined as a "**prerequisite**" to bringing "an action for damages or other relief" arising from an alleged construction defect.  See § 426.005(a) ("A homeowner or builder must comply with this subtitle before initiating an action for damages or other relief arising from an alleged construction defect.")   An "action" is further defined as "a court or judicial proceeding or an arbitration."  Tex. Prop. Code §27.001.  Thus, the statute makes a clear distinction between an SIRP request, on the one hand, and a court proceeding or arbitration on the other.

Section 428.004(d) provides that a third-party inspector, after inspecting the home, shall "issue a recommendation" addressing the construction defect, "based on applicable warranty and building and performance standards," and "designate a method or manner of repair, if any." §428.004(a)-(c).   However, Section 428.004(d) clarifies that "the third-party inspector's recommendation **may not include payment of any monetary consideration**," though it may include reimbursement of "all or part of the fees and inspection expenses paid by the requestor under Section 426.004" if the inspector finds for the party who submitted the request.   § 428.004(d) (emphasis added).  Thus, although damages may be alleged or claimed in an SIRP proceeding, they cannot actually be awarded or even recommended.  Rather, the primary effect of the SIRP is that the third-party inspector's "recommendation or ruling shall constitute a rebuttable presumption of the existence or nonexistence of a construction defect or the reasonable manner of repair of the construction defect.  A party seeking to dispute, vacate, or overcome that presumption must establish by a preponderance of the evidence that the recommendation or ruling is inconsistent with the applicable warranty and building and performance standards."  §426.008.  This presumption may have applicability in a subsequent

court proceeding or arbitration.  But it does not have the same monetary consequences as a court ruling or a settlement agreement.

At best, an SIRP falls under the Policy term: "any other alternative dispute resolution proceeding in which such damages are claimed."  (D.E. 36, Ex. A.)  However, the Policy clarifies that, in order for the insurer to defend an insured in an alternative dispute resolution proceeding, the insured must submit **with the insurer's consent**.  (Id.)  It is undisputed that Hardesty did not obtain Defendants' consent to submit to the SIRP.

Finally, regardless of whether the SIRP constitutes a "suit" under the Policy, Plaintiff failed to meet its burden to show that Defendants were served with the SIRP.  During Mr. Simon's deposition, counsel for Defendants noted that his email correspondence does not show that Mr. Simon "ever sent a copy of the SIRP or the appeal form on to Mid-Continent group.  Do you recall doing that?"  Mr. Simon responded:

> I'd be surprised if I didn't.  I know that I had conversations with a fellow there name[d] Claude Husbands; and generally speaking…I would advise him of things that were going on and ask him what did he need.  And he would say "send me this, send me that.  Give me – let me have an interview with Bob Hardesty," those kinds of things.  And so, whether I sent it to him or not, I don't know.  I'm certain that I told him that we were going through this process.

(D.E. 136, Ex. I, p. 20.)

However, although there is documentation of various transactions between Mr. Simon and Mid-Continent beginning as early as April 2008, the evidence does not show that Mr. Simon ever tendered the SIRP request form or appeal form to Mid-Continent.  On April 25, 2008, Mr. Simon sent an email to Mellinee Harwick of GSM Insurers[4] stating that Hardesty had received notice of a problem with Hardesty's work on the Guinn's home.  Mr. Hardesty offered to show Ms. Harwick his files, including a report from the Guinns' engineer outlining the problems.  Ms.

---

[4] GSM Insurors is listed as the Agent on the OSC Policy issued to Hardesty.  (D.E. 36, Ex. A.)

Harwick responded that once Mr. Simon received the report from the Guinn's engineer he should "send the report to [her] office along with providing [her] with a loss date.  My loss notice will be sent to the insurance company with notice for them to contact your office for additional information as needed."  (D.E. 46, Ex. J at 1.)

On May 7, 2008, Mr. Simon sent Ms. Harwick an email with the Guinns' report attached, and asked her to "call me when you have a chance so I can confirm whether there's coverage for this claim."  (D.E. 46. Ex. J at 5.)  When asked about this transaction in his deposition, Mr. Simon stated that he "forwarded stuff" to Mellinee "that she said she was forwarding on to Claude [Husbands at Mid-Continent.]"  (D.E. 36, Ex. I (Simon Depo.) at 21-22.)   At best, this interaction shows that the Guinns' engineer's report was forwarded on to Mid-Continent around May 2008.  However, this was before the SIRP, instituted in July 2008, even began.  Plaintiff provides no other evidence that the SIRP request form or the appeal form were ever tendered on Mid-Continent.[5]

Without documentation of the precise scope of the Guinns' claims, Defendants had no underlying pleadings from which to determine whether the Guinns' allegations were within the Policy's coverage.  Liberty Mut. Ins. Co., 473 F.3d at 599, and no valid notice that Defendants were expected to defend any "suit."  Harwell, 896 S.W.2d at 173-174.  As such, even if the SIRP did constitute a "suit" under the Policy, no duty to defend was triggered by complaints brought in the SIRP process.  Royal Ins. Co. of Am, 391 F.3d at 644; Nat'l Union Fire Ins. Co., 246 S.W.3d at 608.  Plaintiff's breach of contract claim fails on this theory as well.

---

[5] Plaintiff notes that 10 Tex. Admin. Code § 313.7 requires service of the SIRP request on the home builder and argues that "service of the SIRP request fulfils any requirement [of] service of process on the insured as service must be done for the SIRP to proceed." (D.E. 46, p. 11.)  Plaintiff cites no authority for the proposition.  § 313.7 states only that the requestor "shall send a copy of the request and copies of all information submitted to the commission along with the request, by certified mail, return receipt requested, to all other interested parties to the dispute."  As said, there is no evidence Defendants were served.

2.        **Duty to Indemnify**

An insurer's duty to defend and duty to indemnify are distinct and separate. <u>Farmers Tex.</u>
<u>County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997).  Having found that Defendants
are entitled to summary judgment on Plaintiff's claim for breach of duty to defend, the Court
must consider whether Defendants were under a duty to indemnify Hardesty for the settlement
agreement entered into June 1, 2009.

Defendants argue there can be no duty to indemnify Plaintiff based on the June 2009
settlement because Plaintiff's Policy contains a clear and unambiguous "No Voluntary
Assumption" provision, stating that "no insured will, except at that insured's own cost,
voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid,
without our consent."  (D.E. 36, Ex. A at 20.)  Defendants contend Hardesty violated this
provision when Hardesty entered settlement negotiations without Mid-Continent or OSC present
and voluntarily settled its claim with the Guinns' without Defendants' consent.  (D.E. 36, p. 12.)

The Fifth Circuit has made clear that under Texas law an insurer may escape liability on
the basis of a settlement-without-consent provision, with or without a showing of prejudice.
<u>Motiva</u>, 445 F.3d at 386-387.  The Court stated: "[a]n insurer's right to participate in the
settlement process is an essential prerequisite to its obligation to pay a settlement.  When…the
insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer
has no opportunity to participate in or consent to the ultimate settlement decision, we conclude
that the insurer is prejudiced as a matter of law. Under these circumstances the breach of the
consent-to-settle provision in the policy precludes [an action for breach of insurance contract.]"
<u>Id</u>.

Plaintiff contends, however, that Hardesty did not violate the Policy's "no voluntary assumption" provision because Plaintiff did request Mid-Continent's involvement in the post-SIRP settlement process, and Mid-Continent denied coverage knowing that the settlement process was occurring and that its participation had been requested.   (D.E. 46, p. 18.) Specifically, Plaintiff contends that Mr. Simon requested participation in the post-SIRP settlement process in an email sent to Mr. Husbands on March 4, 2009.  This email, recited in full above, specifically states:  "I need to [sic] know, not just whether Mid-Continent will cover this claim but also whether Mid-Continent will deny coverage that otherwise might exist based on Hardesty's requirement, under the law, to make a settlement offer to the other side."  (D.E. 46, Ex. K, p. 4.)  Plaintiff further contends that Mr. Simon was subsequently informed during a phone conversation with Mr. Husbands on March 6, 2009 that coverage was to be denied.  (D.E. 46. Ex. L (Simon Depo.) at 35; D.E. 36, Ex. I (Simon Depo.) at 33-35, 39) ("Claude had been unequivocal that he was declining coverage.")   Thus, according to Plaintiff, because Defendants had already told Hardesty that coverage would be denied, Hardesty did not "voluntarily assume" a defense – it was "forced into this position by Mid-Continent's denial of its request to defend and request for indemnification."  (D.E. 46, p. 17.)

The law on this issue has been clearly stated.  See McGinnis v. Union Pac. R.R. Co., 612 F. Supp. 2d 776, 811-812 (S.D. Tex. 2009).  Ordinarily, an insurance company may insist upon compliance with a policy condition "for its own protection, but it may not do so after it is given the opportunity to defend the suit or to agree to the settlement and refuses to do either on the erroneous ground that it has no responsibility under the policy."  Gulf Ins. Co. v. Parker Prods. Inc., 498 S.W.2d 676, 679 (Tex. 1973).  In such a case, "the insured is no longer constrained by 'no action' or 'no voluntary assumption of liability' clauses."  Id. at 679.  Once an insurer has

breached its duty to defend, the insured is free to settle or litigate, at his option. <u>Great American</u> <u>Indemnity Co. v. Corpus Christi</u>, 192 S.W.2d 917, 919 (Tex.Civ.App.-San Antonio 1946, writ ref'd n.r.e.). Having forfeited its right to conduct the defense, the insurer is bound by the judgment or settlement. <u>Ridgway v. Gulf Life Insurance Co.</u>, 578 F.2d 1026, 1029 (judgment), reh'g denied, 583 F.2d 541 (5th Cir. 1978); <u>Ranger Insurance Co. v. Rogers</u>, 530 S.W.2d 162, 166-67 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.) (settlement). "[A]n insurer who wrongfully failed to defend its insured is liable for any damages assessed against the insured, up to the policy limits, subject only to the condition that any settlement be reasonable. <u>Western Alliance</u> <u>Ins. Co. v. Northern Ins. Co. of New York</u>, 176 F.3d 825, 830 (5th Cir. 1999). In such case, the insured must demonstrate only that, in settling, his conduct conformed to the standard of a prudent uninsured. <u>Simon v. Maryland Cas. Co</u>., 353 F.2d 608, 612 (5th Cir. 1965) (citations removed.).

However, in this case, even if Plaintiff requested participation in the settlement proceeding and Defendants refused to participate, and even if Mr. Husbands informed Mr. Simon on March 6, 2009 that Mid-Continent would be denying coverage, these events occurred <u>before</u> the Guinns filed their state court lawsuit against Hardesty on May 15, 2009 and before service of the suit upon Defendants. Thus, when Defendants were allegedly given the opportunity to participate in the settlement, no duty to defend was breached because no duty to defend had yet been triggered. <u>Royal Ins. Co. of Am</u>, 391 F.3d at 644; <u>Nat'l Union Fire Ins. Co.</u>, 246 S.W.3d at 608. Accordingly, the exception to the general rule that "no voluntary assumption" clauses are to be strictly enforced does not apply.[6] The Policy unambiguously required the consent of Mid-

---

[6] After analyzing the law on this issue the court in <u>West Texas Agriplex</u> came to the same conclusion. 2004 WL 1515122, at * 10, n. 8. In that case, Mid-Continent's policy contained an identical "no voluntary assumption" provision. Although the parties did not raise the issue, the court indicated that this provision would have barred indemnity for a settlement agreement entered into before a lawsuit was filed. The court noted the general rule that

Continent prior to any voluntary settlement incurred by Hardesty. (D.E. 36, Ex. A at 20.)  By proceeding to reach a settlement without Defendants' permission, Plaintiff breached the "no voluntary assumption" condition of the Policy.  Plaintiff is not entitled to indemnity for the settlement agreement.  Summary judgment is granted as to all Plaintiff's breach of contract claims.

### 3.        Plaintiff's Extra-Contractual Claims

Defendants also move for summary judgment on Plaintiff's extra-contractual claims. Plaintiff alleges that Defendants engaged in unfair settlement practices under the Tex. Ins. Code § 541.060(a)(2)(A) by failing in good faith to effectuate a prompt, fair, and equitable settlement of Hardesty's claim for defense costs, even though Defendants knew or should have known that their liability under the Policy was reasonably clear.   Plaintiff alleges Defendants also violated the DTPA when they violated Chapter 541 by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement.  (D.E. 1, Ex. B, p. 8-9.)

Section 541.060(a)(2)(A) provides, in relevant part, that an insurer is liable under the Code for "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: a claim with respect to which the insurer's liability has become reasonably clear[.]"   §

---

"an insurer who denied liability on the grounds that the claim was not covered by the policy [is] liable for the insured's settlement before suit when the claim was found to have been within the policy coverage."  Id. (citing Travelers Indem. Co v. Equipment Rental Co., 345 S.W.2d 831, 835 (Tex.Civ.App.1961)).  But the Court went on to explain:

> However, the insurer is not bound by prior settlements or judgments as to the issue of coverage. See, e.g., Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124, 1127 (5th Cir.1993). Rather, an insured is only bound by the results of the prior suit "to the extent that the judgment involves a cause of action within the coverage of the policy." See Enserch Corp. v. Shand Morahan & Co., Inc., 952 F.2d 1485, 1495-96 n. 13 (5th Cir.1992) (quoting Maryland Cas. Co. v. Mitchell, 322 F.2d 37, 39 (5th Cir.1963)). **Thus, subsumed in the case law seems to be a requirement that a duty to defend be triggered, the insurer breached the duty to defend by denying a defense that was owed, and the underlying cause of action or claim be within the coverage of the policy**. Once these conditions are met, an insurer may be found liable for a reasonable pre-suit settlement made by its insured.

Id. (emphasis added).

541.060(a)(2)(A).  In Universe Life Ins. Co. v. Giles, the Texas Supreme Court "clarified this standard, stating that an insurer may be liable for bad faith by 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'"  Tucker v. State Farm Fire & Cas. Co., 981 F. Supp. 461, 464-465 (S.D. Tex. 1997) (quoting Giles, 950 S.W.2d 48, 49, 55 (Tex. 1997) (reversed on other grounds)).  "The 'reasonably clear' standard recasts the liability standard in positive terms, rather than the current negative formulation.  Under this standard, an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered."  Giles, 950 S.W.2d at 56; see also Saunders v. Commonwealth Lloyd's Ins. Co., 928 S.W.2d 322, 324 (Tex. App.--San Antonio 1996, no writ) ("Under Texas law, an insurer who can prove that it possessed a reasonable basis for denying or delaying payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, enjoys immunity from statutory bad faith under the Texas Deceptive Trade Practices Act and the Texas Insurance Code.")

"The Court in Giles made clear that whether a claim is "reasonably clear" is a fact issue."  Tucker, 981 F. Supp. at 464-465 (citing Giles, 950 S.W.2d at 56.)  However, "when the facts overwhelm, factual issues may be decided by the Court as a matter of law."  Id. (citing Anderson, 477 U.S. at 250, 106 S. Ct. at 2510).  "Moreover, a bad-faith action requires much more demanding proof than the simple contractual suit on the insurance policy." Id. (citing State Farm Lloyds, Inc. v. Polasek, 847 S.W.2d 279, 283 (Tex. App.--San Antonio 1993, no writ).

In this case, Plaintiff alleges that Mr. Simon requested participation in the post-SIRP settlement proceeding in an email sent to Mr. Husbands on March 4, 2009, where Mr. Simon stated: "In any case, I need to [sic] know, not just whether Mid-Continent will cover this claim but also whether Mid-Continent will deny coverage that otherwise might exist based on

Hardesty's requirement, under the law, to make a settlement offer to the other side.  Please let me know as soon as possible.  If you call me today or tomorrow, please call me on my home number…If you call me Friday or later, please call me at the office[.]"  (D.E. 46, Ex. K, p. 4.)

Even if this email constitutes a clear demand for participation in the settlement, the evidence does not support that Defendants failed to attempt in good faith to settle any claim for which Defendants "knew or should have known" that coverage was "reasonably clear."  Giles, 950 S.W.2d at 56.  Plaintiff contends Mid-Continent informed Mr. Simon through Mr. Husbands that it would deny coverage prior to the settlement, on March 6, 2009.  (D.E. 46, p. 23.)  Mr. Simon conceded in his deposition that Mr. Husbands did not give him any basis for the denial, but rather referred Mr. Simon to the forthcoming denial letter.  (D.E. 36, Ex. I (Simon depo.) at 35 (Q: "Did he give you a basis for denial?" A: "No. He said it would follow with a letter.")  In the denial letter, sent July 31, 2009, Mid-Continent stated that, based on its review of the Guinns' Original Petition, there was no duty to defend or indemnify Hardesty for the Guinns' claim because: (1) damage to the property are to the insured's work (2) damages sought may not qualify as "Property Damage" caused by an "Occurrence" and (3) some of the damages may have manifested subsequent to OSC's last policy coverage date of 1/22/07. (D.E. 35, Ex. 7; D.E. 46, Ex. I.)

Even if the Court considers Mr. Husband's alleged March 6, 2009 denial in light of the subsequent denial letter, the given bases for denial were not unreasonable based upon the facts Defendants possessed at the time the claim was denied.  See Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995) (reasonableness of denial judged from facts possessed by insurer at time of denial).  Defendants could reasonably have believed the Guinns' claim was excluded by the Policy's "Your Work" exclusion ("Exclusion L").  Exclusion L provides that insurance does

not apply to: " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."[7]  (D.E. 36, Ex. A, p. 5.)  "Your work" is defined, in relevant part, as "work or operations performed by you or on your behalf."  "Products-completed operations hazard" is defined, in relevant part, as " 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except . . . [w]ork that has not yet been completed or abandoned."  (D.E. 36, Ex. A, p. 16.)

The Fifth Circuit has explained that the "Your Work" exclusion is a common "business risk" exclusion "designed to exclude coverage for defective work performed by the insured." Mid-Continent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207, 211 (5th Cir. 2009).  Respecting an identical "Your Work" exclusion, the Fifth Circuit recently held that it "only precludes coverage for liability for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the defective work."  Wilshire Ins. Co. v. RJT Constr., LLC, 581 F.3d 222, 226 (5th Cir. 2009); see also JHP, 557 F.3d at 211 (narrowing a similar, though not identical, exclusion to "that particular part" of the property damaged during ongoing operations.)

In the Original Petition, the Guinns alleged that in 2006 they discovered "numerous problems with the work performed by Defendants [Hardesty], including but not limited to improper installation of the windows and doors, improper stucco application, improper roof application, improper installation of the HVAC equipment, improper insulation and installation of insulation."  (D.E. 35, Ex. 2, p. 3.)  They alleged that Hardesty's negligence in the course of remodeling their home caused them to suffer economic damages.  (Id. at 3-4.)  The SIRP form

---

[7] Plaintiff does not allege that the allegedly defective work was performed by a sub-contractor.

indicates additional property damage, including roof leaks and cracks in the floor and walls of the Guinns' home.  (D.E. 35, Ex. 1.)  Based on this information, Defendants could reasonably have believed all damages alleged by the Guinns were limited to the work performed by Hardesty.  Even if Defendants' conclusion that no coverage existed was later found to be erroneous, the evidence overwhelmingly supports the reasonableness of Defendants' conclusion at the time.  Thus, there can be no liability under Chapter 541(a)(2)(A). Tucker, 981 F.Supp. at 465 (citing Giles, 950 S.W.2d at 49; Saunders, 928 S.W.2d at 324; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994) (insurance carriers maintain the right to deny questionable claims without being held liable for an erroneous denial)).

As such, Plaintiff has failed to plead and prove allegations giving rise to a violation of Tex. Ins. Code § 541.060(a)(2)(A) or the DTPA.  Summary judgment is granted as to all Plaintiff's extra-contractual claims as well.[8]

## IV.   Conclusion

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment (D.E. 35) is DENIED.  Defendants' Motion for Summary Judgment (D.E. 36) is GRANTED.


SIGNED and ORDERED this 13th day of December, 2010.

Janis Graham Jack
United States District Judge

---

[8] Defendants have also filed a motion to strike Plaintiff's Supplemental Expert Designations as untimely pursuant to Fed. R. Civ. P. 26.  (D.E. 32, D.E. 34.)  The motion is dismissed as moot in light of this Order granting summary judgment for Defendants.